

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN W. STOKES, III,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Civil Action No. 1:18-CV-1445 (DNH/DJS)

**STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677**

It is hereby stipulated by and between the undersigned Plaintiff (meaning any person, other than the Defendant, the parties' attorneys, and the settlement broker, signing this agreement waiving and releasing claims, whether or not a party to this civil action), and the Defendant, United States of America, including its agents, servants, and employees (hereinafter "United States"), collectively, "the parties," by and through their respective attorneys, as follows:

1.    The parties to this Stipulation for Compromise Settlement and Release (hereinafter "Stipulation") do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, including claims for wrongful death, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Stipulation.

2.    This Stipulation is not, is in no way intended to be, and should not be construed as,

an admission of liability or fault on the part of the United States, its agents, servants, or employees, and it is specifically denied that they are liable to Plaintiff. This settlement is entered into by all parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation.

3. In consideration for the Plaintiff's agreement to accept the terms and conditions of this settlement, the United States agrees to pay the cash sums set forth below in Paragraph 3.a. and to purchase the revisionary annuity contract described below in Paragraph 3.b.

   a. Within five business days after counsel for the United States receives (1) this Stipulation signed by all parties to said document; (2) the Social Security numbers or tax identification numbers of Plaintiff and Plaintiff's attorneys; (3) a copy of the birth certificate and social security card (or alternative form of identification acceptable to the United States) of John W. Stokes, III; and (4) an authorization by the Attorney General or his designee to conclude negotiations and to consummate the settlement, counsel for the United States will submit the following requests to the United States Postal Service, for the sum of FOUR MILLION DOLLARS ($4,000,000.00) (hereinafter "Settlement Amount") to be paid as follows:

      (1) A check in the amount of TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00) (hereinafter "Upfront Cash") made payable to Powers & Santola, LLP and John W. Stokes, III, and delivered to the United States Attorney's Office for the Northern District of New York to hold until Plaintiff has obtained an Order from the United States District Court for the Northern District of New York dismissing this action in its entirety with prejudice, with each party to bear its own costs, expenses, and fees, and expressly not retaining jurisdiction

over the above-captioned action, this settlement, or the United States. Upon entry of said Order, the United States will tender said check to counsel for Plaintiff.

With respect to the payment of the Upfront Cash, Plaintiff stipulates and agrees that the United States will not sign an annuity application form, a uniform qualified settlement form, or any equivalent such forms, and that the United States will not pay the Upfront Cash into a qualified settlement fund or an equivalent fund or account, settlement preservation trust, or special or supplemental needs trust. Plaintiff further stipulates and agrees that the Plaintiff, the Plaintiff's attorney(s), any Guardian Ad Litem, and the Plaintiff's representatives (including any structured settlement annuity broker, regardless of whether said broker was retained by them or by someone else, either before, during, or after the settlement) will not attempt to structure the Upfront Cash in any way, form, or manner, including by placing any of the Upfront Cash into any qualified settlement fund or its equivalent. However, nothing in this Paragraph 3.a.(1) precludes Plaintiff from purchasing non-qualified annuities after Plaintiff has cashed the Upfront Cash settlement check, but Plaintiff agrees not to represent to any person, entity, or agency that Plaintiff is purchasing qualified structured settlement annuities and Plaintiff agrees not attempt to purchase such structured settlement annuities.

Plaintiff agrees to endorse the Upfront Cash check over to Plaintiff's attorney to be deposited in the attorney's client trust account to facilitate the disbursement of the Upfront Cash. Plaintiff stipulates and agrees that the attorney shall escrow the aggregate face value of any and all currently known liens and currently known claims for payment or reimbursement, including any such liens or claims by Medicaid or Medicare, arising out of the subject matter that gave rise to

Stokes v. United States
1:18-cv-1445 (DNH/DJS)
NDNY
August 19, 2020

the above-referenced civil action, whether disputed as legally valid or not, and shall not distribute to Plaintiff any portion of the escrowed amount unless and until said liens and claims have been paid or resolved.

(2) A check in the amount of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00) (hereinafter "Annuity Premium Amount") to JMW Settlements Inc. ("JMW") Client Funds Account for the purchase of the annuity contract(s) described below in Paragraph 3.b.

(3) The parties agree that any attorneys' fees owed by Plaintiff relating to this Federal Tort Claims Act matter shall not exceed twenty-five percent (25%) of the Settlement Amount. 28 U.S.C. § 2678. The parties further agree that any such attorneys' fees, along with Plaintiff's costs and expenses incurred in bringing the above-referenced action, and their costs, expenses, and fees (including all fees if any legal Guardian Ad Litem) associated with obtaining court approval of this settlement on behalf of any minor, incompetent adult, or estate required to sign this Stipulation, shall be paid out of the Upfront Cash paid pursuant to paragraph 3.a.(1) above, and not in addition thereto. The parties agree that any fees, including fees of any legal Guardian Ad Litem, incurred in providing legal services in this matter and in any court proceedings reviewing the settlement for approval purposes shall be considered attorneys' fees and not costs, and shall be subject to the provisions of 28 U.S.C. § 2678.

b. Based on the following terms and conditions, the United States will purchase the following annuity contract(s):

(1) The United States will purchase Installment Refund annuity contract(s), from an annuity company or companies rated at least A by A.M. Best rating service, to pay to John W. Stokes, III the sum of $6,080.00 per month, beginning one month from date of purchase and continuing for the life of John W. Stokes, III and the installment refund period. In the event the cost of the annuity contract(s) has either increased or decreased by the date of purchase, the annuity payments described above shall be adjusted upward or downward to ensure that the total cost of the annuity contract(s) is equal to the Annuity Premium Amount and not more or less than that amount. The monthly annuity payments are based upon the date of birth for John W. Stokes, III of November 9, 1962 that was provided by Plaintiffs. If the date of birth is otherwise, the annuity payments described above will be adjusted accordingly. Upon the death of John W. Stokes, III, any payments remaining during the installment refund period shall be made payable to the United States Postal Service Re John W. Stokes, III and mailed to the following address: Chief Counsel, Torts, United States Postal Service, National Tort Center, 1720 Market St., Room 2400, St. Louis, MO 63155-9948 or, upon written notice, and subsequent change of address.

(2) The annuity contract(s) being purchased pursuant to this Paragraph 3.b. will be owned solely and exclusively by the United States Postal Service and will be purchased through JMW as specified above in Paragraph 3.a. The parties stipulate and agree that the United States Postal Service's only obligation with respect to any annuity contract purchased pursuant to this Stipulation, and any annuity payments therefrom, is to purchase said contract, and they further agree that the United States Postal Service does not guarantee or insure any of the annuity

payments. The parties further stipulate and agree that the United States is released from any and all obligations with respect to an annuity contract and annuity payments upon the purchase of said contract.

(3) The parties stipulate and agree that any annuity company that issues an annuity contract shall, at all times, have the sole obligation for making all annuity payments. The obligation of an annuity company to make each annuity payment shall be discharged upon the mailing of a valid check in the amount of such payment to the address designated by the party to whom the payment is required to be made under this Stipulation. Payments lost or delayed through no fault of the annuity company shall be promptly replaced by the annuity company, but the annuity company is not liable for interest during the interim.

(4) The parties stipulate and agree that the annuity payments cannot be assigned, accelerated, deferred, increased, or decreased by the parties and that no part of any annuity payments called for herein, nor any assets of the United States or the annuity company, are subject to execution or any legal process for any obligation in any manner. Plaintiff and Plaintiff's guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns do hereby agree that they have no power or right to sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise, and that any attempt to sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise, shall constitute a breach of contract.

(5) Plaintiff and Plaintiff's guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns do hereby agree to maintain with the annuity company and

the United States Postal Service a current mailing address for John W. Stokes, III and to notify the annuity company and the United States Postal Service of the death of John W. Stokes, III within ten (10) days of death. Plaintiff and Plaintiff's guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns do hereby further agree to provide to the annuity company and the United States Postal Service a certified death certificate within sixty (60) days of the death of John W. Stokes, III.

(6) Plaintiff and Plaintiff's guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns do hereby agree to provide to the annuity company and the United States Postal Service proof of status as to life, death, legal capacity, and legal authority in the form and at the frequency determined by the annuity company, the United States Postal Service, or both. Plaintiff and Plaintiff's guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns do hereby agree the annuity company may delay or otherwise withhold any payment, without interest, until the annuity company has received such proof or proofs of status. With respect to proof of status of life, Plaintiff and Plaintiff's guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns do hereby agree to provide such proof annually on or before the anniversary of the date the annuity contract is issued by the annuity company ("Anniversary Date"), or at any other time upon request of the annuity company, the United States Postal Service, or both. In the event the annual proof of living status is not provided to the annuity company and the United States Postal Service within sixty (60) days of the Anniversary Date or within sixty (60) days of the date of any request by the annuity company or the United States Postal Service, Plaintiff and Plaintiff's guardians, guardian ad litem (if any),

Stokes v. United States
1:18-cv-1445 (DNH/DJS)
NDNY
August 19, 2020

heirs, executors, administrators, and assigns do hereby agree that the annuity company may cease making payments until such time as proof of living status is provided.

(7) Plaintiff and Plaintiff's guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns do hereby agree that the annuity company has the right to recoup erroneously paid annuity payments.

4. Plaintiff and Plaintiff's guardians, guardian ad litem (if any), heirs, executors, administrators, and assigns hereby accept the terms and conditions of this Stipulation, including the sums set forth above in Paragraph 3.a and the purchase of the annuity contract set forth above in Paragraph 3.b, in full settlement, satisfaction, and release of any and all claims, demands, rights, and causes of action of any kind, whether known or unknown, including any future claims for survival or wrongful death, and any claims for fees, interest, costs, and expenses, arising from, and by reason of, any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, including the death of John W. Stokes, III, or damage to property, and the consequences thereof, which Plaintiff or his heirs, executors, administrators, or assigns may have or hereafter acquire against the United States Postal Service on account of the subject matter of that gave rise to the above-captioned action.

Plaintiff, on behalf of himself, his respective heirs, executors, administrators, assigns, predecessors and successors in interest, do hereby, for good and valuable consideration, the receipt of which is hereby acknowledged, release and forever discharge the United States, and its respective officials, agencies, representatives, officers, employees, agents, assigns and attorneys, from any and all claims, demands, rights, causes of actions, liens, and all other liabilities

whatsoever, whether known or unknown, suspected or unsuspected, that Plaintiff has had, now have or hereafter may have with respect to the same subject matter that gave rise to the above-captioned action, as well as claims relating to or arising out of the subject matter that gave rise to the above-captioned action that could have been but were not alleged in this action.

Plaintiff and Plaintiff's guardians, heirs, executors, administrators, and assigns further agree to reimburse, indemnify, and hold harmless the United States Postal Service from and against any and all claims, causes of action, liens, rights, or subrogated or contribution interests (whether such claims, causes of action, liens, rights, subrogated interests, or contribution interests sound in tort, contract, or statute) incident to, or resulting or arising from, the acts or omissions that gave rise to the above-captioned action, including claims or causes of action for wrongful death.

The Plaintiff and Plaintiff's guardians, heirs, executors, administrators, and assigns further stipulate and agree that they are legally responsible for any and all past, present, and future liens and past, present, and future claims for payment or reimbursement, including any past, present, and future liens or claims for payment or reimbursement by any individual or entity, including an insurance company, Medicaid (including the State of New York), and Medicare, arising from the injuries that are the subject matter of this action. Plaintiff stipulates and agrees that they will satisfy or resolve any and all such past, present, and future liens or claims for payment or reimbursement asserted by any such individual or entity. Plaintiff agrees that, no later than thirty (30) days from the date any past, present, or future lien or claim for payment or reimbursement is paid or resolved by Plaintiff, he will provide to the United States evidence that said lien or claim has been satisfied or resolved and that said lienholder has waived and released such lien or claim. The evidence

required by the terms of this Paragraph may be satisfied by a letter from Plaintiff's attorney representing to counsel for the United States that such lien or claim has been satisfied or resolved and that the lienholder has waived and released such lien and claim.

5.  This compromise settlement is specifically subject to each of the following conditions:

   a.  The Attorney General or the Attorney General's designee must approve the terms and conditions of the settlement and authorize the attorney representing the United States to consummate a settlement for the amount and upon the terms and conditions agreed upon by the parties, as set forth in this Stipulation.

   b.  The parties must agree in writing to the terms, conditions, and requirements of this Stipulation. The parties stipulate and agree that the Stipulation and the compromise settlement are null and void in the event the parties cannot agree on the terms, conditions, and requirements of this Stipulation. The terms, conditions, and requirements of this Stipulation are not severable and the failure to agree, fulfill, or comply with any term, condition, or requirement renders the entire Stipulation and the compromise settlement null and void. The parties must agree to the terms, conditions, and requirements of this Stipulation before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee.

   c.  John W. Stokes, III must be alive at the time the annuity contract described in Paragraph 3.b. is purchased. In the event of the death of John W. Stokes, III prior to the annuity contract is purchased, the entire Stipulation and compromise settlement are null and void.

d.      Plaintiff must obtain a release and waiver of any claim or cause of action (whether sounding in tort, contract, statute, or otherwise) that any alleged tortfeasor, if any, has or may have in the future against the United States arising out of the subject matter of the above-captioned action. This condition is for the benefit of the United States exclusively. The United States will provide the form of Release and Waiver, or any changes to the form required by the United States, to be used by Plaintiff in obtaining a Release and Waiver from any alleged tortfeasor. Before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee, Plaintiff must provide the United States with either (i) all such releases and waivers required by this Paragraph 5.f., or (ii) a written representation by Plaintiff's attorney stating that, after a diligent search of counsel's law firms' records and files, including expert and consultant reports, and of Plaintiff's records and files, Plaintiff and his attorney are unaware of any such potential tortfeasor.

e.      The United States District Court for the Northern District of New York must dismiss this action in its entirety with prejudice, with each side bearing its own costs, expenses, and fees, and with the District Court not retaining jurisdiction over the above-captioned action, this settlement, or the United States.

6.      The parties agree that this Stipulation, including all the terms and conditions of this compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and Plaintiff expressly consents to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

Stokes v. United States
1:18-cv-1445 (DNH/DJS)
NDNY
August 19, 2020

7. Plaintiff shall be solely responsible for full compliance with all applicable Federal, state, and local tax requirements. Plaintiff executes this Stipulation without reliance upon any representation by the United States as to tax consequences, and Plaintiff agrees that he is responsible for the payment of all taxes that may be associated with this settlement. Further, nothing in this Stipulation waives or modifies Federal, state, or local laws pertaining to taxes, offsets, levies, and liens that may apply to this Stipulation or the Settlement Amount proceeds. Plaintiff executes this Stipulation without reliance on any representation by the United States as to the application of any such law. Plaintiff, on behalf of himself and his guardians, heirs, executors, administrators, assigns, subrogees, predecessors in interest, and successors in interest, understand and agree that this transaction may be reported to the Internal Revenue Service and other government agencies in the ordinary course of the business of the United States and may be subject to offset pursuant to the Treasury Offset Program.

8. Plaintiff represents that he has read, reviewed and understand this Stipulation, and that he is fully authorized to enter into the terms and conditions of this agreement and that they agree to be bound thereby. Plaintiff further acknowledges that he enters into this Stipulation freely and voluntarily. Plaintiff further acknowledges that he has had sufficient opportunity to discuss this Stipulation with his attorney, who has explained the documents to Plaintiff and that Plaintiff understands all of the terms and conditions of this Stipulation.

9. It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party. All such counterparts and signature pages, together, shall be deemed to be one document.

Stokes v. United States
1:18-cv-1445 (DNH/DJS)
NDNY
August 19, 2020

WHEREAS, the parties accept the terms of this Stipulation for Compromise Settlement and Release as of the dates written below:

Executed this __25th__ day of __January__, 2021

ANTOINETTE T. BACON
Acting United States Attorney

By: _/s/ Karen Folster Lesperance_

Karen Folster Lesperance
Assistant United States Attorney
Bar Roll No. 514108

~~Executed this ____ day of _____, 2020.~~

~~GRANT C. JAQUITH~~
~~United States Attorney~~


~~By:~~ _____

~~Mary E. Langan~~
~~Assistant United States Attorney~~
~~Bar Roll No. 518971~~

Executed this ____ day of _____, 2020.

POWERS & SANTOLA, LLP

By: _____

Laura M. Jordan, Esq.
Attorney for Plaintiff
Bar Roll No.: 512419

Stokes v. United States
1:18-cv-1445 (DNH/DJS)
NDNY
August 19, 2020

WHEREAS, the parties accept the terms of this Stipulation for Compromise Settlement and Release as of the dates written below:

Executed this _____ day of _____, 2020.

                        GRANT C. JAQUITH
                        United States Attorney

By: _____
     Mary E. Langan
     Assistant United States Attorney
     Bar Roll No. 518971

Executed this 4th day of September, 2020.

                        POWERS & SANTOLA, LLP

By: _____
     Laura M. Jordan, Esq.
     Attorney for Plaintiff
     Bar Roll No.: 512419

Executed this 4th day of September 2020.

_John Stokes_
JOHN W. STOKES, III
Plaintiff

SO ORDERED:

_David N. Hurd_
Hon. David N. Hurd
United States District Judge

2/3/21

Stokes v. United States
1:18-cv-1445 (DNH/DJS)
NDNY
August 19, 2020

Page 14 of 16

Executed this 9th day of September, 2020.

STRUCTURED SETTLEMENT BROKERAGE COMPANY

JMW SETTLEMENTS, LLC (HEREINAFTER "COMPANY")

    I, the undersigned, am duly authorized to sign this Stipulation on behalf of the Company and have furnished written proof thereof to the United States. I also declare under penalty of perjury that the Company and its employees, agents, and structured settlement annuity brokers are covered by an Errors and Omission insurance policy and a fidelity bond or equivalent insurance coverage, and have furnished to the United States a certificate or proof of insurance for such policies. By signing this Stipulation, I agree that the Company will accept the Annuity Premium Amount. I further agree that, within five business days of receipt of the Annuity Premium Amount, the Company will (1) disburse the Annuity Premium Amount to an annuity company(ies), rated at least A by A.M. Best rating service, for the purchase the annuity contract(s) described above in Paragraph 3.b of this Stipulation, and (2) provide to the parties written proof that the Annuity Premium Amount has been accepted by said annuity company(ies).

    I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

By: _____
Mark S. Feldheim
On behalf of the Company

Executed this 9th day of September 2020.

STRUCTURED SETTLEMENT ANNUITY BROKER
Mark S. Feldheim (HEREINAFTER "BROKER")

    I, the undersigned Broker, declare that I currently meet the minimum qualifications set forth in 28 CFR § 50.24 to provide structured settlement annuity brokerage services to the United States and that I am currently covered by an Errors and Omissions insurance policy and a fidelity bond or equivalent insurance coverage, and have furnished to the United States a certificate or proof of insurance for such policies. By signing this Stipulation, I agree that the application for any annuity contract and the annuity contract issued by the annuity company will comply with the terms and conditions of Paragraph 3.b of this Stipulation.

    I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

_____
Mark S. Feldheim
Structured Settlement Annuity Broker

Stokes v. United States
1:18-cv-1445 (DNH/DJS)
NDNY
August 19, 2020